UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NATIONAL ELEVATOR BARGAINING ASSOCIATION; and KONE, INC.; | ) ) ) | |
| Plaintiffs; | ) ) | Docket No. |
| v. | ) ) | |
| INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS, LOCAL 4; KEVIN McGETTIGAN, Individually and as Business Manager; DAVID T. MORGAN, Individually and as Business Representative; STEVEN A. MORSE, Individually and as Business Representative; and all others conspiring, acting in concert or otherwise participating with them or acting in their aid or behalf, Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | April 17, 2009 |

## VERIFIED COMPLAINT

### THE PARTIES

1.      Plaintiff, National Elevator Bargaining Association ("NEBA") is a multi-employer bargaining association incorporated under the laws of the State of Delaware with its principal office at 362 Cedar Lane, Teaneck, New Jersey.  NEBA is the representative for collective-bargaining purposes for employer-members who are engaged in the business of constructing, modernizing, repairing and maintaining elevators, escalators, dumbwaiters, moving walkways and similar devices for third parties such as building owners and general contractors in every state of the United States, including the Commonwealth of Massachusetts.

2.      Plaintiff KONE, Inc. ("KONE"), a Delaware corporation, with its headquarters located in Moline, Illinois, and offices in other locations throughout the United States, including Massachusetts, is engaged in the business of constructing, modernizing, repairing and servicing

elevators and escalators. KONE is one of the employer-members of NEBA and is represented by NEBA for purposes of collective bargaining. KONE has a branch office located at One New Boston Drive, Canton, Massachusetts.

3. KONE employs elevator constructor Mechanics, Helpers and Apprentices represented by the International Union of Elevator Constructors (the "IUEC") for and on behalf of its locals including Defendant IUEC Local 4 ("Local 4").

4. This action, for a temporary restraining order, preliminary and permanent injunctive relief and damages for Defendants' improper and unlawful work stoppage and other interferences with the Plaintiff's operations in violation of a collective-bargaining agreement, is a suit for violation of the contract between an employer and a labor organization representing employees in an industry affecting commerce, as defined in the Labor Management Relations Act, 29 U.S.C. § 141 et seq.

5. This Court has jurisdiction of this action pursuant to 29 U.S.C. § 185(a).

6. NEBA and KONE are employers within the meaning of Section 2(2) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 152(2).

7. The IUEC, which has a principal place of business at 7154 Columbia Gateway Drive, Columbia, Maryland, is the exclusive collective-bargaining representative of elevator constructor Mechanics, Helpers and Apprentices, for and on behalf of its local unions, including Defendant Local 4, which has a principal place of business at 50 Park Street, Dorchester, Massachusetts. Local 4 represents elevator constructor Mechanics, Helpers and Apprentices employed by KONE in the Boston metropolitan area.

8.    The IUEC and Local 4 (collectively, the "Unions") are labor organizations within the meaning of Section 2(5) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 152(5).

9.    Defendant Kevin McGettigan is the Business Manager for Local 4.

10.   Defendant David T. Morgan is the Business Representative for Local 4.

11.   Defendant Steven A. Morse is the Business Representative for Local 4.

12.   For many years prior to 2002, the IUEC entered into a series of five-year collective-bargaining agreements with the National Elevator Industry, Inc. ("NEII"), a multi-employer bargaining group of which KONE was a member. The IUEC-NEII contracts were referred to as the "Standard Agreements." The last Standard Agreement was effective from July 9, 1997 to July 8, 2002.

13.   In 2002, KONE and other elevator companies withdrew from NEII for purposes of collective bargaining. KONE negotiated its own collective-bargaining agreement with the IUEC, which had a term of July 9, 2002 to July 8, 2007. The IUEC entered into substantially similar agreements of identical duration with other former NEII members including but not limited to Otis Elevator Company ("Otis"), Schindler Elevator Corporation ("Schindler") and ThyssenKrupp Elevator Company ("Thyssen"). The IUEC characterized these agreements as identical, and referred to them collectively as the "Master Agreement."

14.   In 2007, NEBA, on behalf of KONE and its other employer members, negotiated a collective-bargaining agreement with the IUEC on behalf of its affiliated local unions (the "NEBA Agreement") which has a term of July 9, 2007 to July 8, 2012. A copy of the NEBA Agreement is attached hereto as Exhibit A.

15.   The NEBA Agreement has language substantially the same as the predecessor

3

Master Agreement and the Standard Agreement in many articles.

## THE COLLECTIVE-BARGAINING AGREEMENT

16.    Article XIV of the NEBA Agreement expressly prohibits strikes during the term

of the Agreement. It provides in pertinent part:

### ARTICLE XIV
### STRIKES AND LOCKOUTS

**Par. 1.** It is agreed by both parties to this Agreement that so long
as the provisions herein contained are conformed to, no strikes or
lockouts shall be ordered against either party. It is understood that
this Paragraph shall be applied and construed consistent with the
provisions of Article IV, Par. 11 concerning Grievance and
Arbitration procedure.

**Par. 2.** No strike will be called against the Company by the Union
unless the strike is approved by the International Office of the
International Union of Elevator constructors. Sufficient notice shall
be given to the Company before a strike shall become effective.
Except in the case of Contract Service Work as specified in Article
IX of this Agreement, work stoppages brought about by lawful
picketing or strikes by building trades local unions affiliated with
Building Trades Councils shall not constitute a strike within the
meaning of this Article.

**Par. 3.** In the event of a strike, work stoppage or lockout affecting
Mechanics, Helpers and Apprentices on New Construction or
Repair Work, men working on Contract Service shall not be
affected by such strike, work stoppage or lockout, and the Union
will supply competent men to the Company to do all work covered
under Contract service whether such men are continuously
employed in this work or not prior to the strike, work stoppage or
lockout.

17.    Article XV of the NEBA Agreement requires that "[a]ny difference or dispute

regarding the application and construction of this Agreement" shall be resolved under the

grievance/arbitration procedure set forth in the Agreement, which provides for final and binding

arbitration by an impartial arbitrator.

18.    Article IX of the NEBA Agreement applies to contract service work, and Par. 7

provides:

> On contract service where the Company has a contract in one building only or adjacent buildings, for the examination and care of enough elevators to warrant keeping a man or men working continuously for sixteen (16) hours, the Company may establish a shift from 5:00 P.M to 12:00 A.M. or 12:00 A.M. to 7:00 A.M. Pay for this work will be eight (8) hours pay for seven (7) hours worked at the regular rate of pay. Saturday, Sunday, and Holidays are classed as overtime and paid at the overtime rate. For the sixteen (16) hour calculation the seven (7) hour shift will be counted as an eight (8) hour shift.

19.     The NEBA Agreement covers the terms and conditions of employment of elevator constructor Mechanics, Helpers and Apprentices employed by KONE in Massachusetts.

## THE UNDERLYING DISPUTE AND THE UNLAWFUL STRIKE

20.     KONE has service and maintenance contracts with hundreds of customers in Massachusetts, New Hampshire and Vermont. Currently, KONE has service and maintenance contracts for approximately 2,700 units (i.e., one elevator or one escalator), 2,300 of which are in Boston alone. Under those contracts, KONE is obligated to maintain, repair and adjust elevators and escalators on an "as-needed basis." All of KONE's service and maintenance contracts in the Boston area require KONE to respond to service calls reporting malfunctioning equipment (sometimes referred to as "shutdowns") twenty-four hours per day, seven days per week.

21.     Some of KONE's larger customers require KONE to provide on-site or dedicated service personnel around-the-clock. Two such customers are Logan International Airport ("Logan") and the Massachusetts Bay Transportation Authority ("MBTA").

22.     Logan has approximately 175 elevators, escalators and moving walkways throughout the airport, while the MBTA system has approximately 325 elevators and escalators at over 70 locations throughout the area. Those elevators, escalators and moving walkways are critical to providing safe, reliable access to the airport and the mass-transit system, including

allowing handicapped individuals access to, from and throughout the facilities. As part of its obligation to provide elevator and escalator service to Logan and the MBTA, KONE has personnel who are devoted exclusively to both facilities (as opposed to being responsible for a "route" consisting of many customers' facilities).

23.     A dispute has arisen regarding the rate of pay for KONE employees responding to evening and weekend elevator or escalator shutdowns at Logan and the MBTA. Local 4 Business Manager McGettigan has directed KONE employees to refuse to respond to such shutdown unless KONE agrees to Local 4's position regarding the applicable rate of pay for the time spent responding to the shutdown.

24.     Friday, April 17, 2009 through the following Tuesday is a particularly busy time for mass transit facilities and other places of public accommodation in the Boston Area. Monday, April 20 is Patriot's Day and the date of the Boston Marathon and a late-morning Boston Red Sox game. In addition, professional sporting events are scheduled for this weekend at the TD Bank Garden where KONE also is obligated to provide on-site service personnel. These events make for particularly heavy ridership on elevators and escalators at the MBTA and Logan Airport; and consequently, an interruption in elevator or escalator service can critically disrupt the safe and efficient flow of passengers throughout the city.

25.     On the morning of Friday, April 17, 2009, all but one of the KONE employees scheduled to work at Logan and the MBTA Friday evening and over the weekend reported being instructed by Defendant Local 4 Business Manager McGettigan that if any elevator or escalator shutdowns occur at Logan or the MBTA during their shifts, they are to refuse to respond to the shutdown unless KONE accedes to Local 4's position regarding the rate of overtime pay. At least two of the KONE employee reported being threatened with internal Union charges and

disciplinary action if they were to disregard Defendant McGettigan's directive and comply with KONE's work instructions.

26.     Local 4 Business Manager McGettigan confirmed giving these directives to KONE employees during a telephone conversation with KONE New England District Manager Neil Mullane at approximately 12:00 noon on Friday April 17, 2009.  Local 4 Business Manager McGettigan firmly stated that he will not retract the directive.

27.     KONE has demanded verbally and in writing that Local 4 cease and desist from directing KONE employees to refuse to work as directed and rescind the directives described above, but Local 4 has refused to do so.  A copy of KONE's April 17, 2009 letter to Local 4 is attached hereto.

28.     Responding to elevators and escalators that have broken down is a principal reason for arranging for dedicated elevator service technicians at Logan and the MBTA.  If employees were to honor the improper directive described above, presumably KONE would be forced to attempt to locate and dispatch other personnel to respond to shut-downs at MBTA or Logan Airport, even though on-site personnel were in place to perform the work.  If such employees are not available when needed, it would be impossible to timely respond to the shutdown.

29.     Local 4's directives to on-site personnel at Logan Airport and the MBTA could result in delays in responding to critical service calls from customers, for example if no other employee is nearby and available to respond to the call.  The threat of delay is particularly acute at Logan Airport where dispatching someone from offsite would also entail the time of obtaining appropriate security badging to allow the person to enter the facility and access the malfunctioning equipment.

30.    In addition to Logan and the MBTA, KONE's service contracts obligate it to provide on-call emergency elevator service at a variety of locations through the metropolitan Boston area, including hospitals, nursing homes, high-rise apartments, condominiums, hotels and hospitals.  Many of these residential facilities are serviced by only one elevator, so that if the elevator malfunctions, there is no other elevator available for residents, many of whom are elderly.  In addition to service contracts at hospitals, nursing homes, high-rise apartments and other areas where elevator service interruptions could result in immediate harm to elevator users, KONE also has service contracts at high traffic areas including T.F. Greene Airport in Rhode Island and Manchester Airport in Manchester, New Hampshire, the Federal Courthouses in Boston and Worcester, Massachusetts, the TD Bank Garden , the Boston Convention Center and the World Trade Center.  KONE also has contracts at hotels, malls, shopping centers and other places open to the public where operational elevators are necessary to ensure access to the facilities by disabled persons.

31.    If KONE on-site personnel at the MBTA or Logan Airport refuse to respond to elevator shutdowns and KONE must attempt to dispatch other personnel to these locations, these other personnel would not be available to respond to elevator service calls at the numerous other locations in Local 4's jurisdiction.

32.    The NEBA Agreement's grievance and arbitration procedure applies to disputes regarding wages, including overtime wages, and any dispute over this issue is subject to final and binding arbitration pursuant to Article XV of the NEBA Agreement.

33.    On information and belief, Local 4 is engaged in an illegal strike and work stoppage to force KONE to pay employees at a specific rate for responding to shutdown at their

assigned facilities during the evening and/or weekend. This is a work stoppage over an arbitrable dispute and violates Article XIV of the KONE Agreement, the no-strike clause.

34.    Defendants' actions in causing a refusal to work relate to a matter that both the Plaintiffs and the Defendants are contractually bound to arbitrate, by virtue of Article XV of the NEBA Agreement.

35.    KONE has demanded that the Union arbitrate the underlying dispute, in accordance with the Agreement, but the Union has refused.

36.    The Defendant's coercive actions are in deliberate willful and calculated violation of the NEBA Agreement undertaken in an effort to force KONE to accede to the Defendant's position in disregard of the arbitration process.

37.    Upon information and belief, unless restrained by order of this Court, the concerted refusal to work by the employees represented by Defendants in violation of the Agreement will continue.

## THE IRREPARABLE HARM RESULTING FROM
## THE UNLAWFUL WORK STOPPAGE

38.    KONE has contractual obligations to customers to service their elevators and escalators, including responding promptly to emergency situations where public safety, health and welfare are at risk. The need for an immediate response to elevator problems is especially important at mass transit facilities such as Logan and the MBTA.

39.    The prompt servicing of elevators and escalators in emergency situations is important to public safety, health and welfare. Such situations have occurred, for example, when smoke or fire threatens buildings, when people become trapped in elevators.

40.    The Defendants' illegal work stoppage at Logan and the MBTA has created undue pressure on other Mechanics, who typically respond to KONE's other customers, thereby

9

creating a serious threat to public safety at hospitals where patient care or surgery may be interrupted by an elevator failure. The presence of non-operational elevators and escalators at hospitals, nursing homes or other locations where the elderly or disabled live or work can exacerbate the conditions created by emergencies. It is for this reason that KONE provides its customers with 24-hour service, every day of the year and services some customers through regular Routes and overtime call-backs and others through stand-by Mechanics. Regardless of the service arrangement, KONE's customers expect prompt service and depend on the Company's reliability at all times. A collective work stoppage or strike by employees refusing to handle service calls would seriously disrupt and interfere with KONE' service operations in the greater Boston, Massachusetts area. In addition, it would pose a serious threat to customer relations and would put the Company at risk of potential liability for its inability to promptly respond to shutdowns at Logan and the MBTA, as well as other call-backs.

41.    Unless the relief sought herein is granted, substantial and irreparable injury to KONE and its customers will follow. The unlawful work stoppages will prevent KONE from fulfilling its contractual obligations and threaten KONE' reputation and good will with customers.

42.    KONE has no adequate remedy at law for the injuries caused and threatened by Defendants' illegal conduct.

43.    Unless Defendants are enjoined from their illegal and unlawful acts, strike, work stoppage, refusal to perform work and interference with work assignments, and are ordered to resume performance of work, such actions will continue to cause immediate, substantial and irreparable harm to Plaintiffs, the amount of which cannot be definitely ascertained, in that:

10

a. KONE will be unable to render adequate performance of its contractual obligations to service elevators and escalators; and

b. KONE will suffer temporary and permanent loss of business as a result of damage to its goodwill and reputation in the industry and its commercial relationships as a result of which its ability to bid on future jobs will be impaired; and

c. KONE will be caused to breach its agreements to provide elevator and escalator maintenance service to its customers.

d. Members of the public will be subject to threat of irreparable harm.

44. The effect on the Defendants, if injunctive relief is granted, is less onerous than the harm that will be suffered by KONE and its customers if the injunction is not granted.

45. NEBA and KONE have complied with all obligations imposed by law that are involved in this labor dispute.

46. NEBA and KONE have made every reasonable effort to settle this labor dispute.

47. No prior application for the relief herein sought by Plaintiffs or for similar relief has been made to any court or judge of the United States or of any state.

WHEREFORE, Plaintiffs, NEBA and KONE demands judgment:

(I) Granting Plaintiffs a temporary restraining order, and a preliminary and permanent injunction, restraining and enjoining Defendants, their officers, agents, representatives, members, employees and attorneys and all persons acting in concert or participation with them, including but not limited to the individuals named as Defendants in this Verified Complaint, from in any manner or by any means:

(A) calling, causing, inducing, encouraging, authorizing, conducting,

11

continuing in or engaging in any strike, concerted work stoppage, concerted work slowdown, sit-down or any other act of coercion or interference with KONE's normal operations;

    (B)    by Union discipline, penalty or otherwise, interfering with, or inducing or attempting to induce any person to interfere with any employee or agent of Plaintiffs in the course of any such employee's or agent's work for Plaintiffs;

    (C)    by threats or otherwise, interfering with or attempting to induce any person to interfere with or otherwise affect the ordinary continuation of KONE's operation, and from taking any action which would interfere with this Court's jurisdiction in the premises;

    (D)    causing, inducing, conducting or carrying out any concerted activity of any kind having the effect of interfering with the KONE's normal operations prior to the hearing on Plaintiffs' application for a preliminary injunction;

    (II)    Directing Defendants to take all reasonable means to communicate and effectuate the provisions of the orders issued by the Court, including but not limited to the holding of meetings with employees represented by Defendant IUEC and Defendant Local 4, and the issuance forthwith of appropriate notices or other communications to the members, officers, and agents of Defendants, and all those in active concert with them; requiring the immediate return to work of all employees of Plaintiff represented for collective-bargaining purposes by Defendants; and rescinding any oral or written notices, orders, directions, or requests to employees of KONE authorizing, directing, inducing or encouraging any strike, slow-down, work stoppage refusal to work or other limitation upon production;

    (III)    Directing Defendants together with Plaintiffs forthwith to arbitrate, pursuant to the collective-bargaining agreement between Plaintiffs and Defendants, the present dispute between them concerning preassembly of escalator components; and

(IV)   Granting such other and further relief to which Plaintiff may be entitled, including

costs and disbursements of the action.

Dated at Brattleboro, Vermont
April 17, 2009

ATTORNEYS FOR PLAINTIFFS
NATIONAL ELEVATOR BARGAINING
ASSOCIATION AND KONE, INC.

Nathan L. Kaitz (BBO #256760)
Morgan, Brown & Joy, LLP
200 State Street, 11th Floor
Boston, MA  02109-2605
T: (617) 788-5014
F: (617) 367-3125
E-mail: nkaitz@morganbrown.com


Timothy E. Copeland Jr.
Downs Rachlin Martin PLLC
28 Vernon Street
Brattleboro, VT 05302-0009
T:  (802) 258-3070
F:  (802) 258-2286
E-mail:  tcopeland@drm.com

13

## VERIFICATION

STATE OF MASSACHUSETTS
COUNTY OF _____Suffolk_____

Neil P. Mullan hereby certifies as follows:

I am the District Manager, for KONE, Inc.; I have read the foregoing Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief, except as to matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

_____4-17-09_____
Date

_____Neil P. Mullane_____
Neil Mullane

STATE OF MASSACHUSETTS
_____ COUNTY, SS.

At _Boston_, Massachusetts this 17th day of April 2009, personally appeared, _Neil Mullane_, who gave oath to the truth of the foregoing, and he acknowledged this instrument, by him sealed and subscribed, to be his free act and deed.

Before me _____
Notary Public
Commission Expires: 2/1/2013

Dated at Boston, Massachusetts this 17th day of April 2009.

_____
Nathan L. Kaitz (BBO #256360)
Morgan, Brown & Joy, LLP
200 State Street, 11th Floor
Boston, MA 02109-2605
T: (617) 788-5014
F: (617) 367-3125
E-mail: nkaitz@morganbrown.com

3049342.1

14